JOHN R. WARE AND F. B. McCONICA v. L. D. LANGMADE.

1. THE ORAL PROMISE OF ONE OF TWO PARTIES TO A MUTUAL AGREEMENT, AS CONSIDERATION FOR THAT OF THE OTHER PARTY.

W. and McC., owners of oil and gas lands, by a lease granting the right to operate for and produce petroleum oil and gas, and L., owner of adjoining oil and gas lands, by a similar lease, for the purpose of operating their respective leases amicably, to preserve the rights of each with respect to the dividing line, and to avoid increased expense and probable loss and damage, mutually agreed and promised, orally, not to drill or construct any oil or gas wells, on either of said leasehold estates within two hundred feet of the said division line: *Held,* The promise of one was a sufficient consideration for the promise of the other, the consideration passing was both valuable and good, and the agreement was not void for want of consideration.

2. NOT VOID UNDER PROVISIONS OF STATUTE OF FRAUD.

Such oral agreement was not for land or interest in land, but was merely an agreement settling and fixing upon the best method of operating the said leases, and was not void by the provisions of section 4199, Revised Statutes.

3. REMEDY FOR BREACH OF SUCH A CONTRACT IS BY INJUNCTION.

An action at law, for breach of such negative contract, does not afford the aggrieved party an adequate remedy. Injunction is the proper remedy.

ON APPEAL from the Court of Common Pleas of Hancock county.

DAY, J.

The plaintiffs, John R. Ward and F. B. McConica, and the defendant, L. D. Langmade, are, and have been engaged in the business of drilling, mining, operating for and producing petroleum oil and gas. In August, 1894, plaintiffs had the exclusive right, by a proper lease, to drill and operate for oil and gas on a tract of land in section four, Portage township, Hancock county, Ohio, and the defendant, at said date, by a similar lease, had the exclusive right to drill and operate on lands lying in the same section and adjacent to the lands of plaintiffs, on the north, east and south sides. These several tracts of land are valuable and productive oil and gas territory. Contiguous oil and gas territory can be most profitably operated by the different owners by reserving a strip of territory about 200 feet wide, on each side of the dividing line, entirely free of wells; and the

best results are obtained in the Ohio oil fields by locating and constructing the wells nearly or quite 400 feet from each other. Wells nearer together than 350 or 400 feet are injured by their proximity, are less productive and shorter lived. To refrain from drilling wells nearer the dividing line than about 200 feet, is necessary to secure the just rights of adjoining proprietors, and in that light is mutually beneficial to the adjacent leaseholders. With a view to lessen the expense of operating their said leases, and for their mutual benefit, in the securing to each a just and full share of the product, the plaintiffs and defendant, in August, 1894, made and entered into an agreement, not in writing, whereby it was mutually stipulated, promised and agreed by and between them, in consideration of the mutual benefits to accrue to each of them, that neither of them would drill any well or wells for oil or gas nearer than 200 feet of any boundary line dividing their contiguous parcels of oil territory. The said agreement was acted upon by both parties, and in part carried into effect, each party drilling a number of wells on either side of the line, and observing and complying with the provisions of the agreement by not drilling within 200 feet of the line. Plaintiffs have observed and performed the terms of the said agreement in every particular, and relying on it, and because of it, have expended large sums of money in operating their said lease, and have located and constructed a number of wells each of which has been located and constructed with reference to, and in compliance with the provisions of the said agreement, the required distance from said dividing line; yet the defendant, in violation of the stipulations of said agreement, and for the purpose of injuring and distressing plaintiffs and to obtain undue advantage of them, has located and commenced drilling a well for oil within fifteen feet of the said division line, and will complete the said well, and will drill other wells in violation of the said agreement, unless prevented, and will thereby greatly and irreparably damage and injure plaintiffs and their property.

The foregoing facts, substantially, were stated by the plaintiffs in a petition as a cause of action, and relief touching them prayed for by injunction. The defendant, by answer, interposed three defenses: First—A denial that any such agreement was made and entered into. Second—If any such agreement was made it was entirely without consideration on the part of either plaintiffs or defendant, and therefore void. Third—If any such agreement was made, there was no note or memorandum of it in writing signed by the parties, or either of them, and that such an agreement was and is within the statute of frauds, and void.

The facts, as claimed by the plaintiffs, and as herein first stated, are clearly established by competent and satisfactory evidence. That there was an agreement between these parties, fairly made and entered into, as asserted by plaintiffs, based on the consideration that it would be mutually just and advantageous; that the parties to it, for a time, in good faith acted upon it, relied upon it, and operated their leases in accordance with its terms, and that the defendant was violating and making breach of it, is not at all doubtful; nor is it a matter of doubt that the arrangement was an eminently proper and reasonable one, necessary, just and fair to both parties, and not at all detrimental to either. It also appears that a breach of the agreement, by drilling wells near the division line as proposed by the defendant, will be injurious to plaintiffs; and it follows that plaintiffs are entitled to a decree in their favor, as prayed for, unless the agreement is void for want of a consideration passing between the parties; void under the statute of frauds and perjuries, because an agreement for land or concerning an interest in land, and not in writing and signed by the parties; or, unless plaintiffs have mistaken their remedy in bringing an equitable action for injunction instead of an action at law for damages for breach of contract, as urged by counsel for defendant.

Was the agreement without consideration, and therefore void?

It is the holding in Ohio, that a promise is a good consideration for a promise; that mutual promises, if made with reference to a proper subject matter,

support each other and furnish a good consideration upholding and sustaining an agreement fairly and reasonably made. In this case there was a mutual agreement. Mutual promises—a promise for a promise—and the subject matter of the mutual promises was not in any sense an improper one, and the integrity of the agreement might, with propriety, be held on that basis alone, if there was no other on which to rest it. There is, however, more in the case than merely mutual promises; there are considerations having real actual value. Here was a division line between contiguous tracts of oil lands, belonging separately to plaintiffs and defendant. Each owner had an undoubted right to drill wells at any point on the lease, and in as close proximity to the line as might be deemed proper; but if one owner constructed a well near the line, so must the other, in order to protect his rights and interests, and secure a fair and just portion of the valuable deposits found in the lands near the division line; and in doing this there was liable to result clashing, rancor, possibly entanglements and litigation, and certainly increased expenditure in operating the leases; diminished earnings and financial loss, to both; to avoid and prevent which the parties might, with propriety, make an arrangement that would be largely beneficial in a pecuniary sense, to both; and having come to an agreement on the matter, and mutually promised each other, their contract may very well be said to be based on considerations both valuable and good.

The claim that the agreement is within the provisions of the statute of frauds and perjuries, presents a closer and more difficult question. Section 4199, Revised Statutes, provides, among other things, that contracts for land, or concerning interest in land, shall be void, unless some note or memorandum of such contract is in writing and signed by the parties to it. The contract in question was not in writing and signed by the parties, and if it was a contract for land, or an interest in land, it is clearly within the provisions of the section, and cannot be enforced. The question then is: Was this an agreement for land or an interest in land within the meaning of the law—were the parties, in any legal sense, contracting for any interest in real estate? After due consideration of the matter, we reach the conclusion that in no legal sense was it a land contract. Neither party, by the terms of the agreement, proposed, or did in fact, part with, or acquire any interest or right in the land. After the contract was concluded, each party still retained, unaffected and unimpaired, all the rights and powers granted by the instruments of lease. The right to drill wells, operate for and produce petroleum oil and gas on the lands included in their respective leases, remained intact, and there was absolutely nothing in the agreement that would, in the least, limit, curtail or prevent either one, from operating for securing and enjoying *all* the mineral deposits, petroleum, oil and gas contained in their respective lands. To secure all the oil and gas belonging to the leased land, it was not necessary to make wells within two hundred feet of the division line; and in making the agreement to not drill wells within that distance of the line, the parties only yielded the abstract right to injure, annoy and make each other uncomfortable; and no valuable right or interest in lands was sought to be, or was in fact, in any way affected. The agreement was merely an arrangement as to the best manner of operating contiguous oil territory so as to produce the best results with the least annoyance and expense.

But it is claimed the plaintiffs have a complete and adequate remedy at law, and hence are not entitled to the high and extraordinary remedy of injunction; that they might bring a suit at law to recover damages for breach of contract, and thus be fully compensated and made whole for all losses sustained. If this claim is found to be correct, then plaintiffs have mistaken their remedy, have instituted the wrong form of action, and must submit to a judgment of nonsuit. Is the claim correct?

The rule obtaining in such case is clearly defined, and of very general application. Generally a person having a complete and adequate remedy at law is not entitled to the equitable one of injunction ; and when the law supplies a complete

remedy by which the person injured can be damnified and afforded full relief, equity will refuse its aid. The remedy, however must be adequate, that is, sufficient—equal to all reasonable demands—capable of giving full and entire relief and protection for loss and threatened loss. In the case before us the law does, unquestionably, provide some kind of remedy. Under the provisions of law, plaintiffs might await a breach of the contract by defendant, and then bring action for damage on account of such breach; the action could be maintained, and it would be something of a remedy, but would it meet the requirements of the rule, and afford full and adequate relief? The question is, not only, does the law provide a remedy, but is the remedy adequate? This query, we think in this case, must be answered in the negative. The loss or damage for which a recovery can be had, must result from a breach of a negative contract—from a failure to comply with the terms of the agreement, "not to drill wells within 200 feet of the division line," and would consist, in some part, of annoyance and vex-ation; of enforced extra expenditure in preserving rights and protecting interests at and near the line; of shortened life and diminished yield of the wells, and of other possible injuries, liable to flow from crowding wells too close to the line. This damage in the nature of things, necessarily must be vague, indefinite and uncertain, and incapable of being accurately estimated or measured, and while an action at law to recover such damage, is in some sort a remedy, it is wholly insufficient, and falls short of meeting the requirements of the rule—an *adequate* remedy. It is not a complete and adequate remedy, by any means, and the claim of defendant with respect to it is not well founded. Indeed, there does not appear to be any remedy at law that will cover the case and afford full relief; or any complete and adequate relief at all, either at law or equity, except to require the parties to specifically carry into effect their negative agreement, "not to drill wells within 200 feet of the division line." This can be accomplished by a decree enjoining defendant in accordance with the prayer in the petition. Injunction, we think, is the proper remedy, and there will be a decree entered in accordance with the views here expressed.

MOORE and SENEY, JJ., concur.

*Ross & Kinder*, and *McConica & Banker*, for Plaintiffs.

*Troup & Dunn*, for Defendant.